Nicholas Horattas (CA Bar No. 350190)
Kenneth P. Abbarno (OH Bar No. 0059791)
*pro hac vice application to be submitted*
**DiCELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, Ohio  44060
(440) 953-8888
nhorattas@dicellolevitt.com
kabbarno@dicellolevitt.com

Diandra Debrosse Zimmermann (AL Bar No. 2956-N76D)
*pro hac vice application to be submitted*
Elton H. Darby III (AL Bar No. 9590-Z15C)
*pro hac vice application to be submitted*
**DiCELLO LEVITT LLP**
505 20th Street North, Suite 1500
Birmingham, Alabama  35203
(205) 855-5700
fu@dicellolevitt.com
edarby@dicellolevitt.com

Chandler Rogers (MS Bar No. 102543)
**ROGERS LAW GROUP P.A.**
*pro hac vice application to be submitted*
Post Office Box 1771
201 East Bankhead Street
New Albany, Mississippi 38652
(662) 538-5990
chandler@rogersgroup.com

Patrick W. Daniels (CA Bar No. 190715)
**DiCELLO LEVITT LLP**
4747 Executive Drive, Suite 240
San Diego, California 92121
(619) 923-3939
pwdaniels@dicellolevitt.com

*Attorneys for Plaintiff Caleb Metts*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| Caleb Metts<br><br>       Plaintiff,<br><br>v.<br><br>Future Motion, Inc.<br><br>       Defendant. | Case No.:<br><br>**Complaint for Damages and Demand for Jury Trial** |

Plaintiff Caleb Metts ("Metts") for his Complaint against Future Motion, Inc., alleges as follows.

## I.     Nature of Action

1.     This a product liability action to recover for severe personal injuries, economic, and non-economic harm Metts suffered because of a defective "OneWheel+" product. The OneWheel+ electronic skateboard was designed, manufactured, marketed, distributed, and sold by Defendant Future Motion, Inc. ("Future Motion")

2.     The subject OneWheel+ bears serial number 1748027080.

## II.     Parties

3.     Plaintiff Caleb Metts is an adult citizen and resident of Mississippi.

4.     Defendant Future Motion is a Delaware corporation with its principal place of business located in Santa Cruz, California.

5.     Future Motion may be served with process through its registered agent for service, A Registered Agent, Inc., 8 The Green, Suite A, Dover, Delaware 19901.

6.     Defendant Future Motion designed, manufactured, and distributed the OneWheel+ that is the subject of this Complaint.

## III.     Jurisdiction and Venue.

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because diversity of citizenship exists and the amount in controversy exceeds $75,000.00, exclusive of fees, costs, and interest.

8.     This Court has general personal jurisdiction over Future Motion because it maintains its headquarters and principal place of business in Santa Cruz, California.

9.     Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) because Future Motion maintains its headquarters and principal place of

1   business in Santa Cruz County, California. Venue is also proper under 28
2   U.S.C. § 1391(b)(2) because the defective and negligent design of the
3   OneWheel+ at issue occurred within this District.

4   **IV.    The OneWheel Product**

5       10.    Future Motion's "Onewheel" product is a self-balancing, battery-
6   powered, one-wheeled transportation device that is often described as an
7   electric skateboard. The product was and is designed, developed, tested,
8   manufactured, inspected, produced, distributed, marketed, and sold by
9   Defendant Future Motion. Upon information and belief, Future Motion
10  developed and designed the subsystems that power the OneWheel+, including
11  motors, power electronics, battery modules, and smartphone applications
12  ("apps").

13      11.    Operation of Future Motion's OneWheel+ is controlled and/or
14  monitored, in part, by an "app" installed on users' smartphones. The Onewheel
15  app allows users to view their total miles, battery life, speed, and other
16  information.

17      12.    Future Motion promotes the Onewheel products as a "toy" that
18  anyone from age 14 to 86 (their oldest known rider) can enjoy. On its website,
19  Future Motion repeatedly clams that the Onewheel products are safe and
20  require no maintenance to operate. Videos on Onewheel's website depict the
21  Onewheel device being operated in concrete drainage basins, through standing
22  water, on an open highway (with cars approaching), across dirt paths, on the
23  beach, through wooded areas, across fallen logs, and on and off the sidewalk.

24      13.    A "FAQ" on Future Motion's website asks, "Are Onewheels
25  difficult to ride?" Posted response: "Nope! Anyone can ride Onewheel with a
26  little instruction and practice. Onewheel is packed with technology that
27  actively helps to keep you balance . . . . Tens of thousands of people of all ages
28  and skill levels have learned to ride and we know you can do it too. Don't

Complaint for Damages and Jury Demand – Case No. _____

believe us? Watch us demo a stranger or check out 86 year old, Shreddin Eddie."[1] The phrase "Shreddin Eddie" is a link to a YouTube video featuring a group of senior citizens (some in wheelchairs) cheering on an elderly gentlemen on a Onewheel, with a younger person prompting him with, "it's a little easier than you thought, huh?"[2] Another FAQ asks, "What's the maximum age to ride Onewheel?" Posted response: "There is none! We have riders of all ages and it is never too late to start riding a Onewheel. Don't believe us? Check out 86 year old, Shreddin Eddie." And another FAQ asks, "Do Onewheels need regular maintenance?" Posted response: "Nope! They're built like tanks."[3]

A. **Pushback, and the nose-dive defect.**

14.     To ride a Onewheel, the rider must step on the back footpad, then place their foot on the front footpad, and slowly bring themselves up to a balanced position. Once the rider is balanced, the Onewheel's motor engages. The rider can then lean forward to move forward and lean backward to slow down. To turn, the rider puts pressure on either their toes or heels.

15.     One major limitation of Onewheel products is that they require power to keep the rider balanced. A sudden loss of power causes the balancing functionality to cease, causing the device to nosedive and throw the rider forward.

16.     The Onewheel will provide the rider with "pushback" when approaching the device's limits during use. When the device reaches a "pushback situation, the nose of the board [the front footpad] will lift to slow the rider down."[4] Often, however, instead of or in addition to pushback, which is allegedly designed as a warning to riders to avoid a dangerous situation, the Onewheel will simply shut off and nosedive, resulting in the rider being thrown

---

[1] https://onewheel.com/pages/faq
[2] https://www.youtube.com/watch?t=75&v=5EGcl-27buw&feature=youtu.be
[3] https://onewheel.com/pages/faq
[4] https://onewheel.com/pages/push-back

Complaint for Damages and Jury Demand – Case No. _____

from the device. The harder the device works to maintain operations, the less the Onewheel can assist the rider in balancing. Different factors impact when and what will cause the Onewheel to shut down and nosedive, including the rider's weight, tire pressure, wind direction, battery level, rider stance, and the grade of incline or decline. It is impossible to predict exactly when a nosedive will occur or what will cause it to occur.

17.   The primary cause of "pushback" nosediving is velocity. When experiencing velocity pushback, the rider will feel the nose of the Onewheel rise to various degrees when a certain velocity is reached. Often, velocity pushback occurs at a speed lower than that of the maximum due to external factors.

18.   Pushback and nosedives also occur on inclines and declines, purportedly to alert the rider that the motor is on the verge of becoming overworked. The problem with this form of pushback, however, is that it is difficult for the rider to discern whether the rider is feeling pushback or whether it is the natural resistance caused by the incline/decline.

19.   While ascending hills riders are already pressing against the nose and the grade of the hill to ascend, and therefore may not discern pushback. While descending, a rider may not feel pushback because his or her weight is likely already on the tail to control speed. Pushback in such situations will likely result in a sudden nosedive or tailspin, especially if the rider is unaware that the Onewheel is giving them pushback. Again, the result will be that the rider feels the Onewheel suddenly shut down during operation.

20.   Another form of pushback occurs when the Onewheel is nearing battery depletion. This pushback purportedly alerts riders by elevating the nose dramatically. When the Onewheel purportedly senses that the batteries are about to be damaged by over-depletion, the Onewheel will shut off entirely,

leaving the rider to recalibrate his or her balance suddenly and unexpectedly, often resulting in the rider being thrown from the Onewheel.

21.    Yet another form of pushback is referred to as regeneration pushback. One way that the Onewheel recharges its battery is to collect kinetic energy when going down a decline and to reserve this power in the battery. However, this may result in the battery becoming overcharged which will damage the battery. Future Motion purportedly "addressed" this problem by designing the Onewheel to suddenly and unexpectedly shut down to prevent battery damage—at the expense of rider safety. Instead of allowing the battery to overcharge, prior to regeneration-related damage to the battery, the Onewheel will shut down. The same problems in discerning pushback while ascending/descending also occur in this situation.

22.    Another common cause of nosedives is acceleration. If a rider attempts to accelerate quickly, the motor may not support the sudden weight and force on it and the nose will suddenly drop. Yet, Future Motion advertises the Onewheel's ability to accelerate quickly, even from a complete stop. Such acceleration nosedives can happen at any speed, even from a dead stop, and the rider will feel as though the motor has suddenly shut off. "Tail-slides" can also occur when the rider shifts his or her weight onto the back of the Onewheel and thereby overwhelms the motor. In that case, the tail of the Onewheel will suddenly drop and slide on the ground, causing the rider to become instantly unbalanced.

23.    The rider can easily override pushback in all situations by continuing to lean forward and accelerate.[5] Often, when the rider does not perceive the pushback sensation, this override is done unintentionally. In many cases, the lift of the pushback may not be noticeable to the rider or might

---

[5] https://onewheel.com/pages/push-back

Complaint for Damages and Jury Demand – Case No. _____

be indistinguishable from the sensation of pressing forward to accelerate or travel uphill or downhill.

24.    When pushback override occurs, the motor of the Onewheel shuts off, causing the front footpad (the "nose") of the device to violently slam into the ground, propelling the rider forward and causing severe injury.

25.    Not only is it prohibitively difficult to determine when nosedives, tailspins, or shut-offs will occur, but the result of such unexpected and undiscernible events almost invariably cause the rider to be ejected or fall from the Onewheel, often resulting in significant injuries. A Onewheel nosedive or shut-off is not a mild event as it might be with any other type of vehicle. The front of the Onewheel violently slams into the ground and the rider is thrown forward, all without warning.

26.    On November 16, 2022, the United States Consumer Product Safety Commission ("CPSC") issued a warning to consumers to cease use of Onewheel products due to the ejection hazard.[6] The CPSC press release notes that between 2019-21 there were at least four reported deaths and multiple reports of serious injuries because the product failed to balance the rider or suddenly stopped while in motion.[7] Future Motion refused the CPSC's request to issue a recall of the product.

**B.    Metts was injured while riding a defective OneWheel+.**

27.     In the summer of 2022, Metts's received his OneWheel+ as a gift.

28.    Metts was interested in the Onewheel because of Future Motion's marketing. Metts believed the OneWheel+ would function as a safe and fun method of transportation as Future Motion advertised.

---

[6] https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-Warns-Consumers-to-Stop-Using-Onewheel-Self-Balancing-Electric-Skateboards-Due-to-Ejection-Hazard-At-Least-Four-Deaths-and-Multiple-Injuries-Reported
[7] *Id.*

Complaint for Damages and Jury Demand – Case No. _____

29.   After becoming acquainted with the OneWheel+'s safety information and features, Metts began to ride the OneWheel+ in June 2022. Metts usually rode his OneWheel+ on short trips around his driveway and neighborhood. Occasionally, Metts would take his OneWheel+ to a local paved rail-trail to ride it. Typically, Mr. Meets would ride his OneWheel+ two to three times per week.

30.   On Saturday, January 7, 2023, Metts was riding his OneWheel+ on his home driveway. Suddenly, and without warning, the OneWheel+ stopped and launched Metts into the air. Metts landed violently on concrete, causing permanent injuries—fractures to his hip, femur, and arm, because of the OneWheel+'s defective nature.

31.   Metts underwent surgery to repair his fractured hip. Metts's injuries kept him out of work for two months.

32.   Metts is permanently damaged and injured  from the fall caused by the OneWheel+. The pain resulting from his injuries continues to date and is expected to continue indefinitely.

### Causes of Action

### Count One—Strict Liability: Design/Manufacturing Defect

33.   Metts repeats and realleges the allegations in Paragraphs 1 through 32 above, as if fully set forth herein.

34.   At all relevant times hereto, Defendant Future Motion was engaged in the business of designing, manufacturing, marketing, testing, selling, distributing, and supplying the subject OneWheel+ and otherwise placed the subject OneWheel+ used by Metts into the stream of commerce.

35.   Metts used the OneWheel+ in a reasonably foreseeable manner.

36.   At all times, Defendant Future Motion held final design approval authority for the subject OneWheel+.

Complaint for Damages and Jury Demand – Case No. _____

37.    The subject OneWheel+'s design defects caused the OneWheel+ to function in a manner that results in sudden and unexpected nosedives. The subject OneWheel+'s defective nature actually and proximately caused injury and damage to Metts.

38.    The subject OneWheel+'s design is excessively dangerous. The risk of danger inherent in the OneWheel+'s design outweighs any benefit of the design.

39.    Future Motion markets OneWheel+ as a toy; Future Motion knew or should have known that the OneWheel+ would be used without inspection for defect. To date, Future Motion continues to design, manufacture, sell, distribute, market, promote, and supply Onewheel products to maximize sales and profits at the expense of public health and safety in conscious disregard of the foreseeable harm to the consuming public, such as Metts.

40.    As a direct and proximate result of Future Motion's conduct, including actions, omissions, and misrepresentations, Metts sustained the following damages:

    a.  Economic losses including medical care and lost earnings; and

    b.  Noneconomic losses including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment and impairment of quality of life, past and future.

**Count Two—Strict Liability: Failure to Warn**

41.    Metts repeats and realleges the allegations in Paragraphs 1 through 32 above, as if fully set forth herein.

42.    At all pertinent times, Defendant Future Motion was engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing the OneWheel+ in the regular course of business.

43.    At all pertinent times, Metts used the OneWheel+ in a reasonably foreseeable manner.

44.     Future Motion knew, or should have known, that the OneWheel+ was defective. To date, Future Motion continues to design, manufacture, sell, distribute, market, promote, and supply its Onewheel products to maximize sales and profits at the expense of public health and safety in conscious disregard of the foreseeable harm to the consuming public, including Metts.

45.     At all pertinent times, including the time of sale and consumption, Future Motion failed to include adequate and proper warnings and/or instructions regarding the nosedive defect and the risk of injury associated with regular and foreseeable use of the OneWheel+.

46.     Had Metts received a warning that the regular and foreseeable use of the OneWheel+ would subject him to the unpredictable pushback/nosedive defect, Metts would not have used the OneWheel+.

47.     Metts sustained the following damages as a foreseeable, direct, and proximate result of Future Motion's acts and/or omissions:

    a.  Economic losses including medical care and lost earnings; and

    b.  Noneconomic losses including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment and impairment of quality of life, past and future.

**Count Three—Negligence: Design/Manufacturing Defect**

48.     Metts repeats and realleges the allegations in Paragraphs 1 through 32 above, as if fully set forth herein.

49.     At all relevant times hereto, Defendant Future Motion was engaged in the business of designing, manufacturing, marketing, testing, selling, distributing, and supplying the subject OneWheel+ and otherwise placed the subject OneWheel+ used by Metts into the stream of commerce.

50.     Metts used the OneWheel+ in a reasonably foreseeable manner.

51.     At all times, Defendant Future Motion held final design approval authority for the subject OneWheel+.

Complaint for Damages and Jury Demand – Case No. _____

52.     The subject OneWheel+'s design defects caused the OneWheel+ to function in a manner that results in sudden and unexpected nosedives. The subject OneWheel+'s defective nature actually and proximately caused injury and damage to Metts.

53.     The subject OneWheel+'s design is excessively dangerous. The risk of danger inherent in the OneWheel+'s design outweighs any benefit of the design.

54.     The subject OneWheel+'s defective condition actually and proximately caused injury and damage to Metts.

55.     Future Motion knew, or should have known, that the OneWheel+ was defective. To date, Future Motion continues to design, manufacture, sell, distribute, market, promote, and supply its OneWheel+ product to maximize sales and profits at the expense of public health and safety in conscious disregard of the foreseeable harm to the consuming public, including Metts.

56.     Future Motion owed a duty to all reasonably foreseeable users of the OneWheel+ to design a safe product without defect.

57.     Future Motion breached its duty by failing to use reasonable care in the design and/or manufacturing of the OneWheel+. The OneWheel+ is defective beyond that would be contemplated by the ordinary consumer when used in a reasonably foreseeable manner.

58.     Future Motion also breached its duty by failing to use reasonable care to employ cost-effective, reasonably feasible alternative designs in the design and/or manufacturing of the OneWheel+.

59.     Future Motion markets OneWheel+ as a toy. Future Motion knew or should have known that the Onewheel+'s defective nature and the risk of injury to the public outweighed any perceived utility of the product.

Complaint for Damages and Jury Demand – Case No. _____

60.    As a direct and proximate result of Future Motion's conduct, including actions, omissions, and misrepresentations, Metts sustained the following damages:

      a.   Economic losses including medical care and lost earnings; and

      b.   Noneconomic losses including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment and impairment of quality of life, past and future.

### Count Four—Negligence: Failure to Warn

61.    Metts repeats and realleges the allegations in Paragraphs 1 through 32 above, as if fully set forth herein.

62.    At all pertinent times, Defendant Future Motion was engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing the OneWheel+ in the regular course of business.

63.    At all pertinent times, Metts used the OneWheel+ in a reasonably foreseeable manner.

64.    At all pertinent times, including the time of sale and consumption, Future Motion failed to include adequate and proper warnings and/or instructions regarding the nosedive defect and the risk of injury associated with regular and foreseeable use of the OneWheel+.

65.    Future Motion knew, or should have known, that the OneWheel+ was defective. Rather, Future Motion continues to design, manufacture, sell, distribute, market, promote, and supply its Onewheel products to maximize sales and profits at the expense of public health and safety in conscious disregard of the foreseeable harm to the consuming public, including Metts.

66.    Future Motion owed a duty to warn Metts of the inherent dangers of operating the OneWheel+, including the pushback/nosedive defect.

67.    Future Motion breached its duty by failing to use reasonable care in the failing to warn consumers, such as Metts, of the OneWheel+'s dangerous

Complaint for Damages and Jury Demand – Case No. _____

nature, including the pushback/nosedive defect. The OneWheel+ is defective beyond that would be contemplated by the ordinary consumer when used in a reasonably foreseeable manner.

68.    Future Motion markets OneWheel+ as a toy. Future Motion knew or should have known that the Onewheel+'s defective nature and the risk of injury to the public outweighed any perceived utility of the product.

69.    Had Metts received a warning that the regular and foreseeable use of the OneWheel+ would subject him to the dangers of the unpredictable pushback/nosedive defect, Metts would not have used the OneWheel+.

70.    Metts sustained the following damages as a foreseeable, direct, and proximate result of Future Motion's acts and/or omissions:

   a.  Economic losses including medical care and lost earnings; and

   b.  Noneconomic losses including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment and impairment of quality of life, past and future.

## Count Five—Breach of the Implied Warranty of Merchantability
### (Cal. Com. Code §§ 2314 and 10212)

71.    Metts repeats and realleges the allegations in Paragraphs 1 through 32 above, as if fully set forth herein.

72.    As set forth above, Metts suffered from a defect that existed in the OneWheel+ which caused it to suddenly stop or nose-dive without warning. Metts seeks recovery for this manifested defect and any and all consequential damages stemming therefrom.

73.    A warranty that the OneWheel+ was in merchantable condition and fit for the ordinary purpose for which the devices are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

74.    As demonstrated herein, the OneWheel+ is not substantially free from defects; the OneWheel+ contains an existing, manifested defect which can

cause the OneWheel+ to suddenly stop or nose-dive, throwing the rider off the OneWheel+ at dangerous speeds.

75.     Future Motion is and was at all times a "merchant" with respect to the Boards under Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of goods under § 2103(1)(d).

76.     The OneWheel+ is and was at all relevant times a "good" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

77.     A warranty that the OneWheel+ was in merchantable condition and fit for the ordinary purpose for which the vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

78.     The OneWheel+, when sold and at all times thereafter, was not in merchantable condition and was not fit for the ordinary purpose for which electronic skateboards are used. The OneWheel+ has a safety defect which presents an actual and/or imminent risk to rider safety; specifically, the risk of a sudden stop or nose-dive, throwing the rider off the OneWheel+ without warning.

79.     It was reasonable to expect that Metts may use, consume, or be affected by the defective OneWheel+, regardless of contractual privity with Future Motion.

80.     The OneWheel+ contained an inherent defect that was substantially certain to result in malfunction during the useful life of the product.

81.     Metts was and is a third-party beneficiary to the Defendant manufacturer's contracts with Future Motion-certified/authorized retailers who sold the OneWheel+ to Metts.

82.     In addition, or in the alternative, Metts relied upon Future Motion's advertising, as alleged above.

83. Future Motion was provided notice of the OneWheel+'s defective nature within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the OneWheel+, by letters from Plaintiff's counsel, on behalf of Plaintiff, to Defendant.

84. Metts sustained the following damages as a foreseeable, direct, and proximate result of Future Motion's breach of the implied warranty of merchantability:

    a. Economic losses including medical care and lost earnings; and

    b. Noneconomic losses including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment and impairment of quality of life, past and future.

## Count Six—Breach of the Implied Warranty of Merchantability (Miss. Code Ann. § 75-2-314)

85. Metts repeats and realleges the allegations in Paragraphs 1 through 32 above, as if fully set forth herein.

86. As set forth above, Metts suffered from a defect that existed in the OneWheel+ which caused it to suddenly stop or nose-dive without warning. Metts seeks recovery for this manifested defect and any and all consequential damages stemming therefrom.

87. A warranty that the OneWheel+ was in merchantable condition and fit for the ordinary purpose for which the devices are used is implied by law pursuant to Miss. Code Ann. § 75-2-314.

88. Future Motion is and was at all times a "merchant" that sold "goods" under Miss. Code Ann. §§ 75-2-104, 75-2-105, and 75-2-314. Future Motion was a "merchant" with respect to "goods of the kind" involved in the transaction.

89. OneWheel+ is and was at all relevant times a "good" within the meaning of Miss. Code Ann. § 75-2-105.

90.     The OneWheel+ was not merchantable at the time of sale. As demonstrated herein, the OneWheel+ is not substantially free from defects; the OneWheel+ contains an existing, manifested defect which can cause the OneWheel+ to suddenly stop or nose-dive, throwing the rider off the OneWheel+ at dangerous speeds.

91.     Future Motion was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the OneWheel+, by letters from Plaintiff's counsel, on behalf of Plaintiff, to Defendant.

92.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Metts suffered personal injuries, economic and non-economic harm.

93.     Metts sustained the following damages as a foreseeable, direct, and proximate result of Future Motion's breach of the implied warranty of merchantability:

    a.   Economic losses including medical care and lost earnings; and

    b.   Noneconomic losses including physical and mental pain and suffering, emotional distress, inconvenience, loss of enjoyment and impairment of quality of life, past and future.

## Count Seven—California Unfair Competition Law
## (Cal. Bus. & Prof. Code § 17200, et seq)

94.     Metts repeats and realleges the allegations in Paragraphs 1 through 32 above, as if fully set forth herein.

95.     California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

96.     In the course of Future Motion's business, it willfully failed to disclose and actively concealed that the Onewheel+ is prone to sudden stopping or nose-diving, which can cause the rider to be catapulted into the air without warning. Particularly in light of Defendant's advertising campaign, a reasonable consumer would expect the Onewheel Onewheel+ to function smoothly and safely, without a nose-dive defect.

97.     Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Onewheel+.

98.     Metts was deceived by Future Motion's failure to disclose the nose-dive defect, and the dangers it posed. Metts reasonably relied upon Future Motion's false misrepresentations. Metts had no way of knowing that Future Motion's representations were false and gravely misleading.

99.     As alleged herein, Defendant Future Motion engaged in extremely sophisticated methods of deception. Metts did not, and could not, unravel Future Motion's deception on his own. The Onewheel+'s software calibrations are a deeply internal component part within the Onewheel+. Metts was not aware of the defective nature of the Onewheel+ before he took possession of it.

100.    Future Motion's actions as set forth above occurred in the conduct of trade or commerce. Future Motion's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers. Future Motion intentionally and knowingly misrepresented material facts regarding the OneWheel+ with intent to mislead consumers such as Metts.

Complaint for Damages and Jury Demand – Case No. _____

101.  Future Motion knew or should have known that its conduct violated the California UCL.

102.  Future Motion owed Metts a duty to disclose the truth about the ose-Dive Defect because Future Motion:

     a.  Possessed exclusive knowledge of the design of the OneWheel+, the calibration of the software, and the risks posed by the OneWheel+;

     b.  Intentionally concealed the foregoing from OneWheel+ and the consuming public; and/or

     c.  Made incomplete representations regarding the quality, durability, and safety of the Onewheel+, while purposefully withholding material facts from Metts that contradicted these representations.

103.  Due to its specific and superior knowledge regarding the nose-dive defect in the Onewheel electronic skateboard, Future Motion's false representations regarding the safety and reliability of the Onewheel+, and Metts' reliance on these material representations, Future Motion had a duty to disclose to Metts about the nose-dive defect and the dangers posed by this defect. Having volunteered information to Metts, Future Motion had the duty to disclose not just the partial truth, but the entire truth.

104.  These omitted and concealed facts were material because they directly impact the value of the Onewheel+ received by Metts. Reliability, durability, performance, and safety are material concerns to Onewheel users. Future Motion represented to Metts that he was receiving an easy-to-ride "toy" device that required no maintenance; it concealed that the Onewheel+ had a defective and dangerous nose dive defect that had resulted in severe injuries and death.

Complaint for Damages and Jury Demand – Case No. _____

105.   Future Motion's conduct proximately caused injuries to Metts. Metts was injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Future Motion's conduct. Metts did not receive the benefit of the bargain and his Onewheel+ suffered a diminution in value. These injuries are the direct and natural consequence of Future Motion's misrepresentations and omissions.

106.   The Onewheel+ has a defect which presents an actual and/or imminent risk to rider safety; specifically, the risk of a sudden stop or nose-dive of the Onewheel+, throwing the rider off the Onewheel+ without warning. Future Motion's knowing violations of the UCL present a continuing risk to Metts as well as to the general public. Future Motion's unlawful acts and practices complained of herein affect the public interest.

107.   Metts seeks monetary relief against Future Motion in an amount to be determined at trial. Metts also seeks punitive damages because Future Motion engaged in aggravated and outrageous conduct. Indeed, Future Motion carried out despicable conduct with willful and conscious disregard of the rights Metts. Future Motion's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages. Metts also seeks attorneys' fees and any other just and proper relief available.

## **Prayer for Relief**

Plaintiff Caleb Metts demands judgment against Defendant Future Motion on each of the above-referenced claims. Metts requests relief including:

A.   Compensatory damages, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

B.   Economic damages in the form of medical expenses, out of pocket expenses, lost earnings, and other economic damages in an amount to be determined at trial of this action;

Complaint for Damages and Jury Demand – Case No. _____

1    C.    Punitive and/or exemplary damages for the wanton, willful,

2    fraudulent, reckless acts of the Defendants who demonstrated a complete

3    disregard and reckless indifference for the safety and welfare of the general

4    public and Plaintiff in an amount sufficient to punish Defendants and deter

5    future similar conduct;

6    E.    Statutory damages including treble damages;

7    F.    Prejudgment interest;

8    G.    Post judgment interest;

9    H.    Awarding Plaintiff reasonable attorneys' fees;

10    I.    Awarding Plaintiff the costs of these proceedings; and

11    J.    Such other and further relief as this Court deems just and proper.

12                              **Jury Demand**

13        Plaintiff hereby demands a trial by jury on all claims so triable.

14

15    Dated: August 29, 2023

16                        Respectfully submitted,

17                        */s/ Nicholas Horattas*
                          Nicholas Horattas (CA Bar No. 350190)
18                        Kenneth P. Abbarno (OH Bar No. 0059791)
                          *pro hac vice application to be submitted*
19                        **DICELLO LEVITT LLP**
                          8160 Norton Parkway, Third Floor
20                        Mentor, Ohio  44060
                          (440) 953-8888
21                        nhorattas@dicellolevitt.com
                          kabbarno@dicellolevitt.com
22
                          Diandra Debrosse Zimmermann (AL Bar No. 2956-
23                        N76D)
                          *pro hac vice application to be submitted*
24                        Elton H. Darby III (AL Bar No. 9590-Z15C)
                          *pro hac vice application to be submitted*
25                        **DICELLO LEVITT LLP**
                          505 20th Street North, Suite 1500
26                        Birmingham, Alabama  35203
                          (205) 855-5700
27                        fu@dicellolevitt.com
                          edarby@dicellolevitt.com
28

Complaint for Damages and Jury Demand – Case No. _____

Chandler Rogers (MS Bar No. 102543)
**ROGERS LAW GROUP P.A.**
*pro hac vice application to be submitted*
Post Office Box 1771
201 East Bankhead Street
New Albany, Mississippi 38652
(662) 538-5990
chandler@rogersgroup.com

Patrick W. Daniels (CA Bar No. 190715)
**DICELLO LEVITT LLP**
4727 Executive Drive, Suite 240
San Diego, California 92121
(619) 923-3939
pwdaniels@dicellolevitt.com

*Attorneys for Plaintiff Caleb Metts*

Complaint for Damages and Jury Demand – Case No. _____